## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| **EBONY RUFFIN**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**BR INTERVIEWING, INC.** and **BRAUN RESEARCH, INC.**<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff EBONY RUFFIN ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendants BR INTERVIEWING, INC. and BRAUN RESEARCH, INC. ("Defendants"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, among other laws.

2.      Defendants are a marketing opinion research firm that conducts telephone and internet research for various survey research firms, government and advertising agencies, foundations, universities and academic entities as well as religious organizations.

3.      In order to provide telephone research services to their clients, Defendants employ hourly telephone interviewers, including Plaintiff, to conduct scripted surveys over the telephone

and enter the answers into a computer.

4.      Defendants employ these telephone interviewers in multiple call center facilities located throughout the United States, including Pensacola, Florida. Defendants also employ telephone interviewers who work for Defendants remotely from their homes.

5.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and the telephone interviewers, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), available at *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf*. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at 2.

6.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

7.      In the course of performing their job responsibilities, Plaintiff and the telephone interviewers use multiple essential computer networks, software programs, applications and phone systems. The time that Plaintiff and the telephone interviewers spend booting up and shutting down their computers and launching and logging into the programs and applications before and after their scheduled shifts and during their unpaid meal breaks is compensable because the programs and applications are an integral, indispensable and important part of their work, and they cannot

perform their jobs effectively without them.

8.      Plaintiff and the telephone interviewers spend substantial amounts of time each day booting up and shutting down their computers and launching and logging into the essential computer networks, software programs, applications and phone systems before and after their shifts and during their unpaid meal breaks.

9.      Defendants, however, do not pay Plaintiff and the telephone interviewers for all of this time.

10.      Instead, Defendants pay Plaintiff and the telephone interviewers only for the time that they are logged into the phone system and are available to make telephone calls, meaning that Plaintiff and the telephone interviewers are only paid for time spent on the phones and are not paid for any time spent turning on their computers and launching and logging into the essential computer networks, software programs, applications and phone systems.

11.      Consequently, Defendants do not pay Plaintiff and the telephone interviewers for all compensable time, including overtime.

12.      Plaintiff's and the telephone interviewers' job duties and responsibilities, as well as the computer networks, software programs, applications and phone systems they are required to utilize during their shifts, are substantially the same, regardless of their particular job title or the call center facility where they work.

13.      The individuals Plaintiff seeks to represent in this action are current and former telephone interviewers who worked for Defendants and are similarly situated to each other in terms of their positions, job duties, pay structure and Defendants' violations of federal and state law.

14.      Defendants knew or could have easily determined how long it takes Plaintiff and the telephone interviewers to perform their work related login activities, and Defendants could

have easily paid Plaintiff and the telephone interviewers for this work, but Defendants deliberately chose not to.

15.     Plaintiff seeks a declaration that her rights and the rights of the putative collective/class members were violated, an award of unpaid wages and liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION

16.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 because Plaintiff's claim raise a federal question under 29 U.S.C. § 201 *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

18.     Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

20.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

21.     This Court has personal jurisdiction over Defendants because Defendants are

incorporated in New Jersey and maintain their principal place of business in New Jersey.

## VENUE

22.     Venue is proper in the District of New Jersey under 28 U.S.C. §§ 1391(b)(1)-(2) because Defendants reside in New Jersey, and a substantial part of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in New Jersey.

## INTRADISTRICT ASSIGNMENT

23.     Defendants maintain their principal place of business in Princeton, New Jersey, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Princeton, New Jersey; therefore, this action is properly assigned to the Trenton Division.

## PARTIES

24.     Plaintiff EBONY RUFFIN is a Florida resident who worked for Defendants as an hourly telephone interviewer at Defendants' call center facility in Pensacola, Florida from September 2018 to April 2020. Defendants paid Plaintiff an hourly wage, most recently at the rate of $12.00 per hour. *See* **Ex. A**, Plaintiff's October 25, 2019 Earnings Statement. Throughout her employment with Defendants, Plaintiff worked over 40 hours during numerous individual workweeks. Plaintiff signed a consent form to join this collective action lawsuit. **Ex. B**.

25.     Defendant BR INTERVIEWING, INC. is a New Jersey corporation (Entity ID: 0100858834) with a Principal Office at 271 Wall Street, Princeton, New Jersey 08540.

26.     Defendant BRAUN RESEARCH, INC. is a New Jersey corporation (Entity ID: 0100644515) with a Principal Office at 271 Wall Street, Princeton, New Jersey 08540.

27.     According to Defendants' website,

Braun Research has over 240 domestic and international highly-trained interviewers led by a staff of expert managers and supervisors. We have completed

over eleven thousand research projects in 25 years of business for nearly every industry. Our technology, including our CATI systems are state-of-the-art, offering a level of control and quality unmatched by our competition. Our two largest call centers are located in the United States, with additional field offices located all over the globe.

*https://www.braunresearch.com/index.php/services/telephone-research* (last visited on 09/17/2020).

28. Upon information and belief, Defendants have employed hundreds of telephone interviewers—including Plaintiff—during the last three years to conduct scripted surveys over the telephone and enter the answers into a computer.

## GENERAL ALLEGATIONS

29. As a telephone interviewer for Defendants, Plaintiff typically worked five to seven days per week, eight to 12 hours per day, and up to 40 or more hours per week, resulting in overtime hours on a regular basis.

30. Throughout her employment with Defendants, Plaintiff was required to work a substantial amount of unpaid time, including overtime, as part of her job as a telephone interviewer.

31. Defendants use a number of job titles to refer to telephone interviewers, including but not limited to: Call Center Agent, Call Center Customer Service Representative, Call Center Representative, Client Service Operator, Customer Service Rep, Customer Service Representative, Executive Telephone Interviewer, Interviewer, Market and Telephone Researcher, Market Research Interviewer, Market Research Rep, Market Researcher, Marketing Research Analyst, Phone Interviewer, Phone Operator, Political Researcher, Research Assistant, Research Assistant/Interviewer, Research Associate, Research Interviewer, Research Telecommunications, Survey Interviewer, Surveyor, Telemarketer, and Telephone Surveyor. Regardless of the job title, the telephone interviewers' job duties and responsibilities are substantially the same, namely, conducting scripted surveys over the telephone and entering the answers into a computer.

32.     Plaintiff and the telephone interviewers use the same or substantially similar computer networks, software programs, applications and phone systems in the course of performing their job responsibilities. These programs and applications are integral and an important part of the telephone interviewers' work, and they cannot perform their jobs effectively without them.

33.     Plaintiff and the telephone interviewers receive substantially the same training, are subject to the same disciplinary policies, and are subject to quality assurance reviews based on the same or similar criteria.

34.     Defendants expressly instruct and train Plaintiff and the telephone interviewers to have all their computer networks, software programs, applications and phone systems open and ready at the start of their scheduled shifts so they can begin making telephone calls (i.e., so that they are "phone ready") at the moment their shifts begin.

35.     If Plaintiff and the telephone interviewers are not logged into the phone system and available to make telephone calls (i.e., if they are not "phone ready") promptly at the start of their scheduled shifts, they are subject to penalties and disciplinary action, including but not limited to, written and verbal reprimands, suspension or termination.

36.     Defendants further enforce this policy through their quality assurance grading system, which is comprised of numerous performance metrics, including adherence (logging into the phone system and being ready to make telephone calls promptly at the start of your scheduled shift) and call handle time (the amount of time it takes to perform a scripted telephone interview).

37.     If Plaintiff and the telephone interviewers do not adhere to Defendants' performance metrics, they are ineligible for incentive compensation and are subject to penalties and disciplinary action, which again include written and verbal reprimands, suspension or

termination.

38.     These policies reinforce that Plaintiff and the telephone interviewers are required to have the essential computer networks, software programs, applications and phone systems open and ready at the start of their shifts so they can begin making telephone calls at the moment their shifts begin.

**A.     Defendants' Unlawful Timekeeping System**

39.     Plaintiff and the telephone interviewers spend substantial amounts of time each day booting up and shutting down their computers and launching and logging into the essential computer networks, software programs, applications and phone systems before and after their shifts and during their unpaid meal breaks.

40.     Defendants require Plaintiff and the telephone interviewers to "clock in" and "clock out" on their computers before and after their scheduled work shifts using Defendants' computer software program "Paychex."

41.     Defendants, however, do not pay Plaintiff and the telephone interviewers according to their clock-in and clock-out times.

42.     Instead, Defendants pay Plaintiff and the telephone interviewers only for the time that they are logged into the phone system and are available to make telephone calls, meaning that Plaintiff and the telephone interviewers are only paid for time spent on the phones and are not paid for any time spent turning on their computers and launching and logging into the essential computer networks, software programs, applications and phone systems.

43.     Consequently, Defendants do not pay Plaintiff and the telephone interviewers for all compensable time, including overtime.

**B.**     **Pre-Shift Off-the-Clock Work**

44.     Before their scheduled shifts and before being paid, Plaintiff and the telephone interviewers are required to boot up and log into their computers and then launch and log into numerous essential computer networks, software programs, applications and phone systems before making telephone calls. The pre-shift startup and login process takes substantial time on a daily basis, in the range of 15 to 20 minutes per shift, or even longer when technical issues arise or when the programs/applications undergo automatic updates. Before each shift and before making telephone calls, Plaintiff and the telephone interviewers must undertake the following essential work tasks in chronological order:

- Locate their workstation, turn on the computer by pushing the power button, and wait for the computer to boot up;

- Unlock the computer screen by punching in a passcode and clicking "Enter" and then wait for Defendants' computer systems and computer networks to boot up;

- Launch the Paychex time and attendance software by double clicking the Paychex desktop icon;

- Log into the Paychex time and attendance software using a username and passcode and click "Clock In";

- Launch the X-Lite softphone program by double clicking the X-Lite desktop icon and wait for the X-Lite softphone program to boot up;

- Launch the VICIdial phone system by double clicking the VICIdial desktop icon and wait for the VICIdial phone system to boot up;

- Log into the VICIdial phone system using a username (the first letter of your first name followed by your last name) and password (the last four digits of your SSN) and click "Login"; and

- Start making telephone calls using the VICIdial phone system.

45.     This mandatory boot-up and login process is performed *before* the telephone interviewers' scheduled shifts, as Defendants expressly instruct and train Plaintiff and the telephone interviewers to have all their computer networks, software programs, applications and

9

phone systems open and ready at the start of their shifts to ensure they are prepared to make telephone calls (i.e., are "phone ready") at the moment their shifts begin. Consequently, Plaintiff and the telephone interviewers must arrive at their workstations approximately 15 to 20 minutes before their scheduled shifts to complete the startup and login process.

46.     Plaintiff and the telephone interviewers are not paid for this time because Defendants do not begin paying Plaintiff and the telephone interviewers until *after* they complete the time-consuming process of booting up and logging into their computers, launching and logging into the Paychex time and attendance software, clocking into Paychex, launching the X-Lite softphone program, and launching and logging into the VICIdial phone system.

47.     This policy results in Plaintiff and the telephone interviewers performing no less than 15 to 20 minutes of unpaid pre-shift work each and every day.

**C.      Meal Period Off-the-Clock Work**

48.     Defendants allow Plaintiff and the telephone interviewers one unpaid 30-minute meal period each shift.

49.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

*Id*. (second emphasis supplied).

50.     Instead of complying with the law, Defendants do not provide Plaintiff and the

telephone interviewers with bona fide meal periods because they require Plaintiff and the telephone interviewers to return to their computer stations *prior* to the end of their meal breaks to unlock their computer screens and log back into the necessary software programs and applications needed to begin making telephone calls promptly at the end of their meal breaks.

51.     The time spent by Plaintiff and the telephone interviewers unlocking their computers and logging back into the software programs and applications prior to the end of their unpaid meal breaks—a process that takes approximately 1 to 2 minutes per day, or more, depending on whether they were kicked out of their computer programs while on lunch—goes unpaid because Defendants do not resume paying Plaintiff and the telephone interviewers until *after* they log back into the phone system and are available to resume making telephone calls.

52.     This policy results in Plaintiff and the telephone interviewers performing no less than 1 to 2 minutes of unpaid meal period work each and every day.

**D.     Rest Period Off-the-Clock Work**

53.     Defendants allow Plaintiff and the telephone interviewers to take periodic rest breaks during their shifts.

54.     Plaintiff and the telephone interviewers typically take at least two ten-minute rest breaks per shift.

55.     The FLSA does not require employers to permit employee breaks. *Sec. U.S. Dept. of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017). If an employer permits short breaks, however, the employees must be paid for that break time. 29 C.F.R. § 785.18. Therefore, the number of hours worked is not limited to the time an employee performs her job duties. *Armour & Co. v. Wantock*, 323 U.S. 126, 133-34 (1944).

56.     The Code of Federal Regulations provides some guidance on what constitutes a "short break," explaining that breaks lasting "five minutes to about 20 minutes" are compensable

as hours worked. 29 C.F.R. § 785.18. In total, that regulation states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. **They must be counted as hours worked**. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

*Id*. (emphasis supplied).

57.     In *American Future Systems*, the Third Circuit addressed this issue in a case involving call center employees and concluded that employers must pay employees for breaks lasting 20 minutes or less, even when they are logged off their computers and not doing any work. 873 F.3d at 423 ("[W]e conclude that the Fair Labor Standards Act does require employers to compensate employees for all rest breaks of twenty minutes or less.").

58.     Instead of complying with the law, Defendants do not pay Plaintiff and the telephone interviewers for rest breaks lasting 20 minutes or less because Defendants expressly train and instruct Plaintiff and the telephone interviewers to clock out of the Paychex time and attendance software and log out of the VICIdial phone system before taking a rest break. Defendants do not resume paying Plaintiff and the telephone interviewers until *after* they return to their workstations, clock back into the Paychex time and attendance software, and log back into the VICIdial phone system.

59.     This policy results in Plaintiff and the telephone interviewers being deprived of no less than 20 minutes of compensable rest break time each and every day.

60.     Because Plaintiff and the telephone interviewers typically worked 40 or more hours per week, Defendants' unlawful rest break policy also deprived them of overtime pay.

**E.      Post-Shift Off-the-Clock Work**

61.     After their scheduled shifts and after making their last telephone call, Plaintiff and the telephone interviewers are required to log out of and close down the VICIdial phone system,

close down the X-Lite softphone program, clock out of the Paychex time and attendance software, log out of and close down Paychex, and then log out of the computer. The post-shift log-out and shutdown process takes substantial time on a daily basis, in the range of 1 to 2 minutes per shift, or more, if the telephone interviewer experiences technical problems with the computer, software or applications.

62.    Plaintiff and the telephone interviewers are not paid for this time because Defendants stop paying Plaintiff and the telephone interviewers as soon as they log out of the VICIdial phone system, meaning that Plaintiff and the telephone interviewers are not paid for any time spent closing down the VICIdial phone system, closing down the X-Lite softphone program, clocking out of the Paychex time and attendance software, logging out of and closing down Paychex, and logging out of the computer.

63.    This policy results in Plaintiff and the telephone interviewers performing no less than 1 to 2 minutes of unpaid post-shift work each and every day.

F.    **Exemplary Pay Period Illustrating Defendants' Off-the-Clock Compensation Deficiencies**

64.    An example of specific workweeks where Defendants failed to pay Plaintiff all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 10/06/19 to 10/19/19**

- Plaintiff was paid at a rate of $12.00 per hour for 80.00 regular hours and $18.00 per hour for 22.70 overtime hours.

- With unpaid pre-shift, meal period, rest period, and post-shift time, in a range of 37 to 44 minutes per shift, at five shifts per week, Plaintiff should have been paid an additional 370 to 440 minutes at her overtime rate of $18.00 during the pay period.

**Ex. A**, Plaintiff's October 25, 2019 Earnings Statement.

**G.** **Defendants Breached Their Contractual Obligation to Pay Plaintiff and the Telephone Interviewers their Regular Hourly Rates for Each Hour Worked**

65.     In approximately September 2018, Defendants offered Plaintiff the opportunity to work for Defendants as an hourly telephone interviewer.

66.     In consideration for Plaintiff's work as an hourly telephone interviewer, Defendants promised to pay Plaintiff an hourly wage for each hour she worked for Defendants.

67.     In approximately September 2018, Plaintiff accepted Defendants' offer of employment and began working for Defendants, creating a valid contract between Defendants and Plaintiff whereby Defendants were obligated to pay Plaintiff her regular hourly rate of pay for each hour she worked for Defendants, including the work related login activities described herein.

68.     Throughout her employment with Defendants as an hourly telephone interviewer, Plaintiff performed all of the work required by Defendants, including the work related login activities described herein. In performing this work, Plaintiff fulfilled all of her duties under the contract.

69.     However, throughout Plaintiff's entire employment with Defendants, Defendants repeatedly and systematically breached the contracts by not paying Plaintiff her regular hourly rate of pay for the work related login activities described herein.

70.     Defendants' failure to pay Plaintiff for each hour of work she performed and that was required of her as an hourly telephone interviewer was a material breach by Defendants.

71.     Because of Defendants' breaches, Plaintiff was deprived of wages owed to her under the contract, including unpaid "gap time" wages.[1]

---

[1] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their wages are averaged across their actual time worked.

72.     Upon information and belief, all of the other hourly telephone interviewers who worked for Defendants had a similar valid contract with Defendants.

73.     Upon information and belief, Defendants repeatedly and systematically breached their contracts with all the other hourly telephone interviewers they employed in the same way that they breached their contract with Plaintiff.

74.     Defendants' contractual promises to pay Plaintiff's and each hourly telephone interviewer's applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to Plaintiff and the hourly telephone interviewers.

75.     Plaintiff and the hourly telephone interviewers are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Defendants, including unpaid "gap time" wages.

76.     Plaintiff and the hourly telephone interviewers earned these wages at the moment they performed the off-the-clock work; and the wages were due to be paid to Plaintiff and the hourly telephone interviewers no later than the pay day for the period in which the off-the-clock work was performed.

77.     Despite the fact that Plaintiff and the hourly telephone interviewers performed the off-the-clock work before and after their scheduled shifts, these off-the-clock hours were not peripheral tasks for which they were owed additional compensation. Instead, the off-the-clock work, which was performed by Plaintiff and the hourly telephone interviewers pursuant to Defendants' express instructions, constituted principal work activities that were integral and indispensable to the telephone interviewers' work; and Defendants were contractually obligated to pay the telephone interviewers for this time at the regular hourly rates at which they were employed.

78.     The fact that Defendants deliberately chose not to pay Plaintiff and the telephone interviewers for this work, and that the off-the-clock work was performed before and after the telephone interviewers' scheduled shifts, does not somehow relieve Defendants of their contractual obligations to pay the telephone interviewers for this time.

79.     Defendants were contractually obligated to pay Plaintiff and the telephone interviewers their regular rates of pay for *all hours worked*, including the work related login activities described herein and rest break time.

**H.     Defendants Benefited from the Unpaid Off-the-Clock Work and Suffered and Permitted it to Happen**

80.     At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above-described work related login activities performed by Plaintiff and the telephone interviewers.

81.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and the telephone interviewers.

82.     At all relevant times, Defendants were able to track the amount of time Plaintiff and the telephone interviewers spent in connection with their work related login activities. However, Defendants failed to do so and failed to pay Plaintiff and the telephone interviewers for the work related login activities they performed.

83.     At all relevant times, Plaintiff and the telephone interviewers were non-exempt hourly employees, subject to the requirements of the FLSA.

84.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the telephone interviewers in order to pressure them into performing the work related login activities off the clock.

85.     At all relevant times, Defendants' policies and practices deprived Plaintiff and the

telephone interviewers of wages owed for the work related login activities they performed. Because Plaintiff and the telephone interviewers typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

86.     Defendants knew or should have known that the time spent by telephone interviewers in connection with the work related login activities is compensable under the law. Indeed, given the explicit guidance set forth in DOL Fact Sheet #64, as cited herein, there is no conceivable way for Defendants to establish that they acted in good faith.

87.     Likewise, Defendants knew or should have known that rest break time lasting 20 minutes or less is compensable under the law. Indeed, given the explicit guidance set forth in 29 C.F.R. § 785.18, as cited herein, there is no conceivable way for Defendants to establish that they acted in good faith.

88.     Despite knowing that Plaintiff and the telephone interviewers performed work related login activities before and after their scheduled shifts and during their unpaid meal breaks, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

89.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff and the telephone interviewers at the FLSA mandated overtime premium of one and one-half times the regular hourly rates at which they were employed because Plaintiff and the telephone interviewers regularly worked 40 hours or more in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

90.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> ***All current and former telephone interviewers who worked for Defendants at any of their call center facilities at any time during the three years preceding the filing***

***of this Complaint through judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

91.     Defendants are liable under the FLSA for, *inter alia*, failing to properly pay Plaintiff and other similarly situated telephone interviewers.

92.     Excluded from the FLSA Collective are Defendants' executives and administrative and professional employees, including computer professionals and outside salespersons.

93.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid premium overtime compensation when they worked over 40 hours in a workweek.

94.     Defendants assigned and/or were aware of all the work that Plaintiff and the FLSA Collective performed.

95.     As part of their regular business practices, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> a.      Willfully failing to pay Plaintiff and the FLSA Collective premium overtime wages for hours worked in excess of 40 hours per workweek; and

> b.      Willfully failing to record all the time that Plaintiff and the FLSA Collective worked for the benefit of Defendants.

96.     Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

97.     Defendants' unlawful conduct has been widespread, repeated and consistent.

98.     A collective action under the FLSA is appropriate because the employees described

above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy or plan; and (d) their claims are based upon the same factual and legal theories.

99.     The employment relationships between Defendants and every proposed FLSA Collective member are the same. The key issues – the amount of unpaid pre-shift start-up/log-in time, unpaid meal period time, unpaid rest period time, and the amount of unpaid post-shift shut-down/log-out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

100.     Many similarly situated current and former telephone interviewers have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

101.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

102.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' personnel and payroll records.

103.     Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

104.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf

and on behalf of the following class:

> *All current and former telephone interviewers who worked for Defendants at any of their call center facilities at any time during the applicable statutory period*.

 (hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

105.    Excluded from the Rule 23 Nationwide Class are Defendants' executives and administrative and professional employees, including computer professionals and outside salespersons.

106.    The Rule 23 Nationwide Class is so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

107.    There is a well-defined community of interest among Rule 23 Nationwide Class members, and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Nationwide Class members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether the time Rule 23 Nationwide Class members spent on pre-shift, meal period, rest period, and post-shift off-the-clock work activities is compensable under applicable law;

b.    Whether Rule 23 Nationwide Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof; and

c.    Whether Defendants' non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment.

108.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result

of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

109.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

110.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

111.    This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage and damages issues in this case to be resolved with relative ease.

112.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

113.    Because Defendants acted and refused to act on grounds that apply generally to the

Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Fed. R. Civ. P. 23(b)(2) is also appropriate.

**COUNT I**
**29 U.S.C. § 216(b) COLLECTIVE ACTION**
**VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

114.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

115.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

116.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

117.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

118.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

119.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

120.    At all times relevant to this action, Defendants required Plaintiff and the FLSA Collective to perform no less than 37 to 44 minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

121.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective was an essential part of their jobs, and these activities and the time associated with these activities

were not *de minimis*.

122.    In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, the unpaid off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of one and one-half times each employee's regular hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

123.    Defendants' FLSA violations were knowing and willful. Defendants knew or could have determined how long it takes the telephone interviewers to perform their off-the-clock work, and Defendants could have easily accounted for and properly paid Plaintiff and the FLSA Collective for these work activities, but deliberately chose not to.

124.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

125.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

126.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendants' behalf.

127.    Defendants' contractual promises to pay Plaintiff's and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the Rule 23 Nationwide Class members.

128.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises and performed under the contracts by doing their jobs and

carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, accepted by Defendants, and that they performed, in connection with the work related login activities described herein.

129.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendants systematically breached their contracts with Plaintiff and each Rule 23 Nationwide Class member.

130.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

131.    As a direct and proximate result of Defendants' contractual breaches, Plaintiff and every other Rule 23 Nationwide Class member have been damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

132.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

134.    At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

135.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs

and carrying out their required work duties.

136.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

137.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of, for the benefit of, and without objection by, Defendants.

138.    Defendants received and accepted the off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, such as increased profits, without having paid for the same.

139.    Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

140.    Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having paid Plaintiff and the Rule 23 Nationwide Class for the same.

141.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to pay them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

142.    As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the putative FLSA Collective

and Rule 23 Nationwide Class, requests judgment as follows:

a.    Certifying this action as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

b.    Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II-III);

c.    Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers, and dates and location of employment of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiff as the representatives of the FLSA Collective and undersigned counsel as class counsel for the same;

e.    Designating Plaintiff as the representatives of the Rule 23 Nationwide Class and undersigned counsel as class counsel for the same;

f.    Declaring Defendants violated the FLSA and the DOL's attendant regulations as cited herein;

g.    Declaring Defendants' violations of the FLSA were willful;

h.    Declaring Defendants breached their contracts with Plaintiff and the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.    Granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

j.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k.    Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.    Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a jury trial under Fed. R. Civ. P. 38.

Dated: October 15, 2020                    Respectfully Submitted,

                                           /s Jason T. Brown
                                           Jason T. Brown (*NJ Bar ID# 35921996*)
                                           Nicholas Conlon (*NJ Bar ID# 34052013*)
                                           Brown, LLC
                                           111 Towne Square Place, Suite 400
                                           Jersey City, New Jersey 07310
                                           Phone: (877) 561-0000
                                           jtb@jtblawgroup.com
                                           nicholasconlon@jtblawgroup.com

                                           Jason J. Thompson (will *pro hac vice*)
                                           Rod M. Johnston (will *pro hac vice*)
                                           SOMMERS SCHWARTZ, P.C.
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076
                                           Phone: (248) 355-0300
                                           jthompson@sommerspc.com
                                           rjohnston@sommerspc.com

                                           *Attorneys for Plaintiff and the putative*
                                           *Class/Collective action members*